# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## **LETTER OPINION**

November 19, 2007

Francis John Vernoia
Genova, Burns & Vernoia, Esqs.
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 2575
Livingston, NJ 07309-1023
    (*Attorney for Plaintiff/Counter-Claim Defendant*
    *Sysco Food Services of Metro New York*)

Rosemary Joan Bruno
Buchanan, Ingersoll & Rooney, PC
550 Broad Street, Suite 810
Newark, NJ 07102-4599

Caroline J. Berdzik
Buchanan, Ingersoll & Rooney, PC
700 Alexander Park, Suite 300
Princeton, NJ 08540
    (*Attorneys for Defendants Local Union No. 863 IBT Pension Plan,*
    *Plan Administrator and Individual Defendants*)

Kenneth I. Nowak
Zazzali, Fagella, Nowak, Kleinbaum & Friedman
One Riverfront Plaza, 3rd Floor
Newark, NJ 07102
    (*Attorney for Defendant/Counter-Claimant*
    *Local 863, Int'l Brotherhood of Teamsters*)

    RE:    <u>Sysco Food Services of Metro New York, LLC v. Tramontana, et al.
            Civ. No. 06-2864 (WJM)</u>

Dear Counsel:

This matter comes before the Court on a Motion to Dismiss filed by Defendants Local Union No. 863 IBT Pension Plan (the "Teamsters Fund" or "Fund"), Plan Administrator Gerrie Daniher and certain individual Plan Trustees.[1]  For the reasons discussed below, the Motion to Dismiss is **GRANTED**.

## Background and Procedural History

Plaintiff Sysco Food Services of Metro New York, LLC ("Sysco"), filed a three-count Complaint challenging its increased pension fund liability, which allegedly resulted from Defendants' conduct.  The Fund is a multi-employer pension plan organized under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which is funded by contributions from employers, including Plaintiff, pursuant to the terms of collective bargaining agreements ("CBAs") between those employers and Local 863.  (Compl. ¶ 14.)  Contributions to the Fund are made based upon the hours worked by employees, at rates agreed upon in the CBAs.  (*Id.*)  Monies contributed and the investment earnings constitute the assets of the Fund and provide the source for benefits payable to fund beneficiaries, including retirees and their spouses.  (*Id.*)

Plaintiff alleges that since at least 1996, the Fund Trustees knew or should have known that contributions from participating employers in the Teamsters Fund failed to finance both current and future liabilities at the benefit levels set by the Fund Trustees, which resulted in the Fund being underfunded.  (*Id.* ¶ 17.)  Plaintiff further alleges that in or after 1996, the Teamsters Fund improperly permitted certain participating employers both to withdraw from the Fund and to place new employees into different funds, thereby aggravating the underfunding of the Teamsters Fund.  (*Id.* ¶ 18.)

Plaintiff alleges that on November 29, 2004, it requested that the Teamsters Fund provide it with certain information, including a complete copy of the Pension Fund Agreement, Declaration of Trust, and actuarial information concerning the financial health of the Fund, as well as the amount and description of any unfunded liabilities of the Fund.  (*Id.* ¶ 19.)  The Teamsters Fund responded on November 30, 2004 by providing an annual valuation of the Fund as of August 31, 2004, which revealed to Plaintiff for the first time that the fund was underfunded and that the amount of the underfunding exceeded $380,000,000.  (*Id.* ¶ 20.)  In light of this disclosure, on

---

[1]     The individual Plan Trustee defendants are Joesph Tramontana, Alphonse Rispoli, Jr., Val V. Fiorillo, Bruce Vivadelli, Louis Sanchez, Dewey Cannella, John F. O'Riordan, David Markowitz, John A. Rogers and William Rourke.  Mr. Rourke has apparently not yet been served with the Complaint.

2

December 9, 2004, Plaintiff asked for certain financial information from the Fund, including information regarding Plaintiff's liabilities for deficiencies in the Fund and how close the Fund was to a "minimum funding deficiency," which would trigger certain disclosure requirements to the Internal Revenue Service.  Plaintiff received no response to this request, and made the request again on February 7, 2005.  (*Id.* ¶ 22.)  On March 23, 2005, the Plan Administrator advised Plaintiff that the Fund Actuary had calculated its withdrawal liability to be $29,569,152.00 as of August 31, 2004.  (*Id.* ¶ 23.)  On May 13, 2005, the Fund's counsel advised Plaintiff that its withdrawal liability and share of unfunded liability had been calculated to be $19,658,752.00, and informed Plaintiff that the actuary had applied for a minimum funding waiver from the IRS.  (*Id.* ¶ 24.)  On or about January 23, 2006, the Fund acknowledged to Plaintiff for the first time that the Fund was severely underfunded.  (*Id.* ¶ 25.)  Plaintiff alleges that the Fund and the Union should have known about this underfunding for approximately ten years.  (*Id.*)  Plaintiff's liabilities to the Fund were now calculated to be in excess of $40 million.  (*Id.*)  Local 863 was also demanding a $6.00 per hour special assessment to alleviate the underfunding, and threatened to strike Plaintiff if the assessment was not paid.  (*Id.*)  Plaintiff alleges that in an effort to pressure Plaintiff to accept this demand, the Fund falsely represented that other contributing employers had agreed to the special assessment.  (*Id.* ¶ 26.)

Based on the foregoing, Plaintiff alleges that beginning in 1996 and continuing through 2005, the Trustees and the Fund,

> through various acts and omissions, fraudulently concealed from Plaintiff that current and future benefits of the Teamsters Fund exceeded the assets of the Fund at current assessment levels, that the underfunding of the Teamsters Fund was worsening annually, that prior to 2006, the Teamsters Fund was in a dire financial condition, that, notwithstanding this dire financial condition, one or more participating employers had been permitted to withdraw from the Fund without paying the full amount of their withdrawal liabilities, including their proportionate share of any deficiencies in the Fund, and that certain other participating employers had been permitted to assign new employees to different funds, thereby depriving the Teamsters Fund of new revenue sources to cover the Fund's liabilities, all of which was intended to and did, in fact, cause Plaintiff to remain as a participating employer in the Teamsters Fund.

(*Id.* ¶ 28.)  Plaintiff alleges violations of ERISA and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, as well as various state contract and tort claims.  (*Id.* ¶¶ 32-45.)   Because Plaintiff concedes that its RICO claim is directed solely at Local 863, that claim will be dismissed as to the moving Defendants.  (Pl.'s Br. Opp. Mot. Dismiss ("Pl.'s Br.") 16, 17, 21.)

Plaintiff's ERISA claim alleges that the Fund, Trustees and Plan Administrator "fraudulently induced Plaintiff to remain an employer participant in the Teamsters Fund through a series of fraudulent misrepresentations and concealments that violated ERISA and established federal common law." (Compl. ¶ 33.) As a result, Plaintiff alleges it has been damaged "in an amount equal to the difference in the withdrawal liabilities it would have incurred if it had been given timely notice of the initial deficiencies in the Fund and the amount of its current liabilities for the accumulated deficiencies that have accrued to the Fund since that date," as well as any additional penalties it may be assessed by the IRS for failure to meet minimum funding requirements. (*Id.* ¶ 34.) Plaintiff also alleges that the actions of the Fund, Trustees and Plan Administrator constituted fraud, constructive fraud, negligent misrepresentation and/or conspiracy under state law, as well as gross negligence in the fiscal management of the Fund. (*Id.* ¶¶ 36-37.)

The Fund, Trustees and Plan Administrator have moved to dismiss the Complaint on various theories, including insufficiency under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The moving Defendants also argue that Plaintiff's state law claims should be dismissed as preempted by ERISA. The Court held oral argument on the Motion to Dismiss on July 24, 2007. Subsequently, Plaintiff informed the Court that the IRS had denied the Fund's request for a waiver of its minimum funding deficiency, and the Court permitted a round of supplementary briefing on the effect of this development on the Complaint and the pending Motion to Dismiss. The Motion to Dismiss is now before the Court.

## Discussion

### I. Plaintiff's ERISA Claim

Because Plaintiff's ERISA claim sounds in fraud, it is subject to the pleading requirements of Rule 9(b). Rule 9(b) provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." A plaintiff may satisfy this requirement by pleading the date, time or place of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach Corp.*, 742 F.2d 786, 791 (3d Cir. 2004).

The moving Defendants argue that despite Plaintiff's broad allegations of fraudulent misrepresentation and fraudulent concealment, Plaintiff fails to plead certain essential specifics, including (1) that the alleged "misrepresentations" were actually false; (2) that any of the individual Defendants knew that the misrepresentations they allegedly made were indeed false; (3) that any of the individual Defendants made the misrepresentations with the intent that Plaintiff rely upon them; (4) that Plaintiff

4

reasonably relied upon any or all of the alleged misrepresentations; (5) that the Defendants had a duty to provide Plaintiff with the information that was allegedly concealed; or (6) the alleged damages resulting from each specific misrepresentation or omission.  (Defs.' Br. Supp. Mot. Dismiss ("Defs.' Br.") 18-19, Defs.' Reply Br. Supp. Mot. Dismiss 9.)  Defendants allege that Plaintiff's generalized allegations do little to apprise the individual defendants of the precise misconduct claimed.  (Defs.' Br. 18.)

The Court agrees that the Complaint fails to meet the heightened pleading requirements of Rule 9(b).  In addition to the deficiencies identified by Defendants, the Court notes that Plaintiff does not allege that the withdrawal liability amounts it was quoted at various points in time were, in fact, wrong, nor does the Complaint as a whole provide sufficient context to elucidate why the Fund's statements were false.  Plaintiff also alleges that the underfunding occurred as a result of the actions of other participating employers — in effect, an indirect challenge to the accuracy of the other employers' withdrawal liability calculations, and an implication that those employers may owe money to the Fund — without further detail.

The Court's description of these deficiencies is not intended to be exhaustive, nor does the Court intend to supply a precise formula for Rule 9(b) compliance in this case.  The Court merely observes that as pleaded, the Complaint fails to state the circumstances constituting fraud with the precision and substantiation necessary to place Defendants on notice as to the precise misconduct with which they are charged.  *Seville*, 742 F.2d at 791.

Because dismissal of Plaintiff's ERISA claim is warranted under Rule 9(b), the Court does not reach Defendants' arguments under Rule 12(b)(6), and also does not reach the issues addressed in the supplemental briefing.  However, the Court would note that on the facts alleged thus far, serious doubts remain as to whether a cause of action exists under ERISA federal common law for the wrongs asserted by Plaintiff.  Specifically, the Court questions Plaintiff's ability to show appropriate damages and causation, as well as the Court's power to grant the relief sought.

## II.     Plaintiff's State Law Claims

In Count II of the Complaint, Plaintiff asserts several state common law contract and tort claims.  Specifically, Plaintiff alleges that the actions of the Fund, Trustees and Plan Administrator constituted fraud, constructive fraud, negligent misrepresentation and/or conspiracy under state law, as well as gross negligence by fiscal mismanagement of the Fund in breach of its obligations to Plaintiff and other employers.  (Compl. ¶¶ 36-37.)

As an initial matter, the above analysis regarding Rule 9(b) applies with equal force to Plaintiff's fraud-based state law claims. However, Defendants also argue that all of Plaintiff's state law claims must be dismissed with prejudice as preempted by ERISA. The Court agrees.

Section 514(a) of ERISA expressly supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). In this case, Plaintiff's state law claims are based on the same underlying facts as its ERISA claim, and the damages alleged — unwarranted liabilities to the Fund — are identical. (Compl. ¶¶ 36-37.) Preemption applies here because any adjudication of Plaintiff's state law claims outside the mechanism prescribed by ERISA would nonetheless require this Court to analyze the parties' rights and obligations under the ERISA plan. This type of outcome is precisely what Congress sought to avoid in developing a nationwide scheme for ERISA plans. *See Kollman v. Hewitt Assocs.*, 487 F.3d 139, 149 (3d Cir. 2007).

Plaintiff concedes that its state law claims were only asserted as an alternative to its ERISA claims. (Pl.'s Br. 13.) Plaintiff argues, nevertheless, that to the extent ERISA does not provide the relief Plaintiff seeks, Plaintiff's state law claims are not preempted because they cannot therefore be said to "duplicate, supplement or supplant" ERISA's civil enforcement scheme. (Pl.'s Br. 12-13.) *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Even if this Court were to decide that Plaintiff cannot state a claim under ERISA, however, the fact that ERISA provides no remedy would not limit the scope of ERISA's preemptive force. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.").

Therefore, the Court finds that Plaintiff's state law claims are expressly preempted by Section 514(a) of ERISA. *See* 29 U.S.C. § 1144(a).

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. As they pertain to the moving Defendants, Plaintiff's state law claims (Count II) and RICO claim (Count III) are **DISMISSED WITH PREJUDICE**, and Plaintiff's ERISA claim (Count I) is **DISMISSED WITHOUT PREJUDICE**.

    s/William J. Martini  
**William J. Martini, U.S.D.J.**